# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**NANCY DELORISE FACENDA,**

    **Plaintiff,**

v.                                                 Case No. 8:09-cv-962-T-TBM

**MICHAEL J. ASTRUE,**
**Commissioner of the United States**
**Social Security Administration,**

    **Defendant.**
_____/

## <u>O R D E R</u>

The Plaintiff seeks judicial review of the denial of her claim for Social Security disability benefits. For the reasons set out herein, the decision is affirmed.

## I.

Plaintiff was fifty-seven (57) years of age at the time of her administrative hearing in July 2008. She stands 5 feet, 5 inches tall and weighed 215 pounds according to her administrative filings. Plaintiff has a high school education. Her past relevant work was as a medical records clerk, receptionist, and as a school crossing guard/crossing guard supervisor. Plaintiff applied for disability benefits in September 2005, alleging disability as of April 26, 2005, by reason of diabetes, asthma, back injury, and knee injury. The Plaintiff's application was denied originally and on reconsideration.

The Plaintiff, at her request, then received a *de novo* hearing before an Administrative Law Judge ("ALJ"). The Plaintiff was represented at the hearing by counsel and testified in her own behalf. Additionally, her fiancé, David Snow, testified, and a vocational expert was called by the ALJ. In essence, Plaintiff testified that she is unable to work due to her asthma and allergies which resulted in a lot of lung problems and missed work. Plaintiff suffers from degenerative joint changes in her back and neck that cause her pain. By her account, she can only walk ten minutes before needing to sit or lie down and can only stand five to seven minutes at a time before her feet, legs, and lower back bother her. Sitting is difficult for her because of the pain in her low back area, and she will often sit on an inflatable donut cushion to relieve her back pain. She estimates she can lift no more than ten pounds.

As for her prior employment as a medical records clerk, Plaintiff testified she worked for a doctor's office pulling charts and filing. For Nissan of Brandon, she worked as a receptionist. Her duties consisted of answering the telephones and receiving customers. For Gulf Management, she answered telephones.

Plaintiff resides with her fiancé and their adopted four-year old daughter. On an average morning, Plaintiff is in bed or moving around only minimally; she spends her afternoons in a recliner. Her daughter-in-law comes over to help her with her daughter. Her fiancé helps with the cooking, laundry, grocery shopping, and clean up. He takes their daughter to play outside. Plaintiff can drive, but only short distances. She goes shopping on occasion. She used to visit friends, but now they come to her house more. She used to make

blankets and other things to sell, but is now unable because of problems with her hands. She will sometimes drive her daughter to pre-school, but usually her daughter-in-law, her fiancé, or a friend will take her.

Plaintiff testified that it seems like she treats with a doctor every other week. Her blood sugar has been high, and she has been having a lot of eye problems. She has difficulty reading because of it and can no longer wear her contacts. She puts 3 different types of drops in her eyes up to 8 times per day. Plaintiff has a machine she uses for breathing treatments due to her asthma. On a good day, she only needs to use the machine once, but if she is having an asthma problem or infection, she needs it 4 to 5 times a day. At the time of the hearing, Plaintiff testified she had been using the breathing machine for shortness of breath a couple times a day for the last couple weeks. Plaintiff also complained of a recent ear infection and a hole in her ear drum which causes her pain; surgery may be necessary. As for her hands and fingers, Plaintiff has had problems off and on for years. She was receiving cortisone shots, but because of her diabetes, that was not preferred and surgery was recommended. She had surgery on both hands, but still experiences problems, stiffness, swelling, and pain with the left hand. Her right hand can bend and she can use it, but it is sensitive. Plaintiff is right hand dominant. (R. 363-79).

Plaintiff's fiancé, David Snow, testified that Plaintiff needs a lot of assistance grocery shopping, driving, dressing herself, and caring for their daughter. He estimates she can only walk about 50 yards to the mailbox and back. She has asthma attacks two to three

3

times per week. Mr. Snow works full-time, but his hours are adjustable and he comes home earlier depending on Plaintiff's needs.

In 2004, Plaintiff was caring for four foster children. Mr. Snow participated in the decision to adopt their daughter who was a newborn in July 2004. Because he broke his leg in 2004, he was able to be home with the baby for her first six months. Plaintiff was working at the time. He was still very active in caring for their daughter when he returned to work. (R. 380-84).

Next, the ALJ took testimony from Theresa Manning, a vocational expert (VE). After classifying Plaintiff's past relevant work, the VE testified upon several hypotheticals of an individual of Plaintiff's age, education, and work experience, with the ability to perform medium or light exertional work. Based on these hypotheticals, the VE opined that such hypothetical individual could perform Plaintiff's past relevant work. With the added limitation of a sit/stand option, the school crossing guard position would be eliminated. Upon a hypothetical where lifting, carrying, pushing and pulling were limited to ten pounds on occasion and five pounds frequently; sitting for up to six hours with standing and walking only two hours, with the ability to alternate sitting and standing at will; no climbing, kneeling or crawling; occasional balancing, stooping, and crouching; and no exposure to concentration of chemicals, wet, humidity, heat, cold, dust, fumes, or gases, the VE opined that such hypothetical individual could perform Plaintiff's past work as a receptionist and secretary. If the ALJ were to credit Plaintiff with the limitations in the medical assessment prepared by Dr. Bearison of Valrico Brandon Medical Group (R. 140-41), the VE testified that none of

4

Plaintiff's past work could be performed. Similarly, if the whole of Plaintiff's testimony was accepted as credible, including how much time she spends in bed and the number of breathing treatments she may need, the VE testified that Plaintiff's past work would not be able to be performed. (R. 384-88).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are set forth herein as necessary.

By her decision of October 30, 2008, the ALJ determined that while Plaintiff has severe impairments related to asthma, history of chronic allergic rhinitis, diabetes mellitus, degenerative disc disease of the cervical spine, lumbar strain, degenerative joint disease of the left knee, history of bilateral epicondylitis, history of bilateral carpel tunnel releases, history of recent bilateral hand surgery, history of plantar fasciitis (right), history of left foot fractures, and obesity, she nonetheless had the residual functional capacity to perform sedentary exertional work.[1] Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform her past work. Upon this conclusion, the Plaintiff was determined to

---

[1] "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §404.1567(a). Social Security Ruling 83-10 elaborates on the definition of sedentary by providing that, "[o]ccasionally means occurring from very little up to one-third of the time," and that "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." *Kelley v. Apfel*, 185 F.3d 1211, 1213 n.2 (11th Cir. 1999).

be not disabled. (R. 12-18). The Appeals Council considered a letter from Plaintiff's counsel and denied Plaintiff's request for review.

II.

In order to be entitled to Social Security disability benefits a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

III.

The Plaintiff raises three claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) Did the ALJ give proper weight to the opinion of claimant's treating physician;

(2) Did the ALJ properly consider claimant's daily activities before and after alleged onset of disability; and

7

(3) Did the ALJ properly consider claimant's age and the combined effect of all impairments.

By her first claim, Plaintiff urges that the ALJ improperly rejected or discounted the opinion of her treating doctor, Dr. Fred Bearison, M.D. By his assessment, Plaintiff's limitations permitted no work. Plaintiff argues that the "contrary" opinion of Dr. Keith Simon, M.D., cited by the ALJ is not proper for comparison where Dr. Simon treated Plaintiff only from April 2001 to April 2006. She urges there is no contrary opinion to that of Dr. Bearison's for the relevant time frame. In sum, Dr. Bearison treated Plaintiff for years both before and after she became disabled and observed her limitations gradually increase. Thus, his opinions should be accepted and the case remanded for benefits. (Doc. 15 at 12-14).

In response, the Commissioner urges that the ALJ's decision was supported by substantial evidence and should be affirmed. As for Dr. Bearison's opinion, the Commissioner notes that the doctor's records contain few, if any, objective findings and nothing to support the restrictive limitations opined in his medical assessment. Although Dr. Simon's opinions for the most part pre-dated Plaintiff's alleged onset date in April 2005, the ALJ nevertheless could rely on Dr. Simon's opinion in determining the credibility of Plaintiff's allegations. (Doc. 16 at 5-9).

Plaintiff is correct that when considering a treating physician's testimony, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997); *MacGregor v. Bowen*, 786 F.2d 1050, 1053

(11th Cir. 1986); *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Such a preference is given to treating sources because such sources are likely to be best situated to provide a detailed and longitudinal picture of the medical impairments. *Lewis*, 125 F.3d at 1440. Furthermore, the ALJ must specify the weight given to the treating physician's opinion or reasons for giving the opinion no weight, and the failure to do so is reversible error. *MacGregor*, 786 F.2d at 1053. Good cause for rejecting a treating source's opinion may be found where the treating sources's opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the treating source's opinion was conclusory or inconsistent with his or her own medical record. *Phillips*, 357 F.3d at 1240-41 (citing *Lewis*, 125 F.3d at 1440); *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

The medical record reveals that Dr. Bearison and Dr. Simon both treated Plaintiff over an extended period of time for an assortment of ailments.[2] Dr. Bearison completed a Medical Assessment of Physical Capacity in July 2008. By this assessment, Plaintiff could sit for only 2 hours in an eight-hour day and stand/walk for only 45 minutes during the same period. He assessed environmental limitations and a number of postural limitations as well by reason of her asthma and allergies. By his account, her condition would prevent her from working 5 to 10 days a month and she had been at this level for 2 to 3 years. (R. 140-41). Dr. Simon was not asked to complete any similar assessment but his records reveal that in 2001,

---

[2]It appears that Plaintiff treated with the Brandon Family Practice in 1996 and 1997 (R. 347-50) and later at the Valrico Brandon Medical Group between 2002 and into 2006. Dr. Bearison appears as one of her treating doctors on an assortment of ailments. (R. 176-243). Dr. Simon, an orthopedic surgeon, saw Plaintiff between 2001 and into 2006, for back, knee, hand, ankle, and foot pain. (R. 257-305).

9

he limited Plaintiff to light duty work status. In January 2002 Dr. Simon opined that Plaintiff was limited to sedentary to light duty with no prolonged standing. (R. 293). For the next several months, he directed only sedentary work due to her back pain. (R. 283-90).

As the decision reflects, the ALJ relied heavily on the findings and opinions from Dr. Simon which suggested that Plaintiff could do work at least at the sedentary exertional level. On the other hand, she rather summarily rejected the 2008 assessment of Dr. Bearison finding it largely based on Plaintiff's subjective complaints and contrary to the other evidence. By my consideration, while the ALJ could have been more explicit in analysis and in her reasoning, my review of the medical record as well as Plaintiff's testimony indicates that the decision to reject the extreme functional capacity assessment of Dr. Bearison as being contrary to the "other evidence" is supported by substantial evidence. Plaintiff's argument pits Dr. Simon against Dr. Bearison, but it is apparent that the decision to reject the 2008 assessment by Bearison was based on more than just the clinical findings by Simon. In addition to the objective evidence, the ALJ considered other treatment notes related to asthma and diabetes. Further, she considered medical notes for treatment after the Plaintiff's alleged onset date. Contrary to Plaintiff's argument here, the evidence from Dr. Simon came from essentially the same period of treatment as Dr. Bearison's treatment. Both treated Plaintiff well before and for a time after her alleged onset date in April 2005 and both were competent to address her condition. Dr. Simon dealt specifically with Plaintiff's assorted pain complaints and his evidence was appropriately considered. His clinical findings are backed by objective testing. That Dr. Simon's statements concerning sedentary to light work were made before the alleged

onset date is not particularly significant in light of the ALJ's finding that the evidence since those statements did not contradict them. (R. 17). Plaintiff does not argue any error in this conclusion and as the Commissioner points out, treatment notes from other doctors after the alleged onset date do not indicate that Plaintiff's condition had worsened to a level consistent with the 2008 assessment by Dr. Bearison. Frankly, though difficult to read, nothing in Dr. Bearison's own notes suggest the severe limitations on sitting and standing suggested by his 2008 assessment.

As noted above, under the applicable standard, the ALJ may discount or reject a treating doctor's opinion where such is contrary to the other evidence. Here, the ALJ was confronted with a functional assessment which she found inconsistent with the other medical evidence and Plaintiff's own statements about her activities. Upon my review of the whole of the medical record, I am obliged to conclude that the ALJ's conclusion to reject the assessment of Dr. Bearison is supported by substantial evidence.

On her second claim, Plaintiff submits the ALJ erred by noting her activities *before* her alleged onset date but failing to consider her activity level *after* she became disabled. While the ALJ noted how Plaintiff cared for four foster children and was a dance instructor, she ignored that Plaintiff stated in a December 2005 form that she had to give up being a dance instructor and that by the end of 2005, Plaintiff only had two of the four foster children and they were in daycare at that time, and gone shortly thereafter. She did thereafter adopt a baby girl but as she said, she had help in caring for her. Further, Plaintiff's daily activities such as shopping, house cleaning, cooking, and outdoor activities were very reduced after

11

becoming disabled and quitting work. Notwithstanding, the ALJ seemed to focus on Plaintiff's activities before she stopped working and ignored the steady decline in her condition and activities after she quit working. (Doc. 15 at 14-16).

The Commissioner responds that the ALJ did consider Plaintiff's activities at the time of the administrative hearing, namely that Plaintiff testified she can do some grocery shopping, drive short distances, go to the store, and visit friends. The ALJ properly considered Plaintiff's activities, along with the other evidence, in evaluating the credibility of Plaintiff's allegations of disabling pain. (Doc. 16 at 11-12).

In this circuit, where an ALJ decides not to credit a claimant's testimony about [pain], the ALJ must articulate specific and adequate reasons for doing so or the record must be obvious as to the credibility finding. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995); *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987). But, the lack of a sufficiently explicit credibility finding may give grounds for a remand if the credibility is critical to the outcome of the case. *Smallwood v. Schweiker*, 681 F.2d 1349, 1352 (11th Cir. 1982). Thus, where credibility is a determinative factor, the ALJ must explicitly discredit the testimony or the implication must be so clear as to amount to a specific credibility finding. *Foote*, 67 F.3d at 1562.

Here, the ALJ discounted Plaintiff's subjective testimony on the basis of the medical record and her level of daily activity which the ALJ concluded supported that even with her

limitations, Plaintiff could at least perform sedentary work. As for Plaintiff's specific argument, I cannot agree that the ALJ inappropriately considered the fact that Plaintiff had earlier cared for four foster children or had taught dance. These were matters of record and the ALJ fairly noted the date of each such report. As the Commissioner urges, the ALJ also noted some of Plaintiff's activities after her alleged onset date which together with the medical record revealed to the ALJ that Plaintiff's pain complaints were simply overstated to the extent Plaintiff claimed they were disabling. The record shows that while shopping, housekeeping, cooking and outdoor activities may not have been mentioned, such were covered at the hearing and, significantly, the decision reflects the ALJ's consideration of Plaintiff's claims that on a typical day she stayed in bed, reclined, or lay down most of the day. Her physical activity was minimal. Here, I cannot conclude that the ALJ's consideration of her activities before her date last insured requires a reversal for further consideration. While this earlier activity sheds little, if any, light on her functional capacity after her alleged onset date, the primary reason for discrediting her subjective complaints was the lack of medical support and, when read as a whole, the decision reflects other adequate and explicit reasons for discounting plaintiff's subjective complaints.

On her final claims, Plaintiff urges that the ALJ failed to take into consideration her age when she quit working at age 54, and the fact that she turned 55 four months later. In addition, the ALJ failed to consider the combined effect of all her impairments. Specifically, Plaintiff complains that the ALJ failed to include Plaintiff's bulging thoracic disc, causing mild to moderate stenosis, as well as the diagnosis (not just the history of) plantar fasciitis and

13

the prescription of a walking cast because of it. Other evidence not considered by the ALJ included her internal hemorrhoids, diverticulitis of the colon, and continuing impairment of both of her hands. Citing SSR 83-10, she argues that most "sedentary" work requires "good use of the hands and fingers for repetitive hand-finger actions." Thus, Plaintiff urges reversal and remand is proper to consider her age and the effect of the combination of her impairments. (Doc. 15 at 16-18).

Because the ALJ concluded that Plaintiff could return to her past work, the Commissioner submits that there was no need to consider her age.[3] As to the combination of Plaintiff's impairments, the decision reflects that the ALJ considered same. Thus, the Commissioner urges that the bulging thoracic disc, plantar fasciitis, and impairments to her hands were specifically discussed in the decision. While the Commissioner concedes that the evidence of hemorrhoids or diverticulitis of the colon were not specifically referenced in the decision, Plaintiff did not identify these as disabling impairments and the ALJ need not scour the medical record searching for other impairments. Of significance, Plaintiff has not alleged any functional or work-related limitations stemming from these conditions. (Doc. 16 at 12-16).

By my review, there was no error in the failure to address the fact that Plaintiff was just four months shy of age 55. As the Commissioner argues and as Plaintiff's counsel

---

[3]The Commissioner cites to the regulations which state, "[i]f we find that you have the RFC to do your past relevant work, we will determine that you can still do your past work and are not disabled. We will not consider your vocational factors of age, education, and work experience . . . " 20 C.F.R. § 404.1560(b)(3).

14

appears to acknowledge, such is not required where the disability decision is based on a finding that the claimant can do her past work. *See* 20 C.F.R. § 404.1560 (b)(3).

Furthermore, the record does indicate that the ALJ considered the combined effects of Plaintiff's impairments to the extent that such were credited. As the Commissioner notes, the findings of the ALJ reflecting that he considered the impairments in combination is sufficient to satisfy that such was done. *See Wilson v. Barnhart,* 284 F.3d 1219, 1224-25 (11th Cir. 2002). However, Plaintiff maintains the ALJ overlooked certain impairments contrary to this standard.

The Act and pertinent case law require that the ALJ consider each impairment, as well as the combined effect of all a claimant's impairments. 42 U.S.C. § 423(d)(2)(B); *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986). In *Bowen v. Heckler*, 748 F.2d 629 (11th Cir. 1984), the court held that where a claimant has alleged a multitude of impairments, a claim for benefits may lie even though none of the impairments, when considered individually, is disabling. In such instances, the ALJ must make specific and well-articulated findings as to the effect of the combination of impairments and whether the combined impairments cause the claimant to be disabled. *Id.* at 635; *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987).

By my consideration, Plaintiff is correct that in identifying her impairments, the ALJ neglected to expressly mention the MRI evidence of a bulging disc at T6-7 included within Dr. Simon's reports (R. 291-92) and a finding of internal hemorrhoids and diverticulitis by Dr. Thomas during a colonoscopy (R. 318-19). While I agree that at a minimum, the MRI

15

evidence should have been cited by the ALJ in her review of the medical evidence, any prejudice in this is simply not demonstrated and a remand for further consideration would serve no useful purpose and thus is unnecessary. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (applying the harmless error rule to an ALJ's misstatement of evidence in a Social Security case); *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (stating that the court will not vacate a judgment unless the substantial rights of a party have been affected); Fed. R. Civ. P. 61.

An MRI of the thoracic spine was taken in February 2002 based on complaints of back pain. As noted, it revealed a broad-based disc bulge at T6-7 with mild canal stenosis. (R. 291-92). At the follow-up examination by Dr. Simon, he noted that while Plaintiff was complaining of back pain, the pain was in the lower back not the mid-thoracic back. Further, his review of the MRI showed no evidence of disc herniation in any thoracic disk. He recommended that Plaintiff try physical therapy and noted her work status as okay for sedentary work. (R. 290). A couple of months later, she did complain of pain in the thoracic spine, but he again okayed her for sedentary work. (R. 283). Given that the record does not suggest other limitations from this condition not ultimately determined by the ALJ and the fact that the decision reflects thoughtful review of this doctor's records and indeed, reliance on the same, a remand on this basis would serve no useful purpose.

As for the internal hemorrhoids and diverticulitis, Plaintiff made no claim that these findings affected her work capacity in any way. The report itself suggests none and a follow-up note in Dr. Bearison's notes simply noted "no polyps." (R. 198). Significantly, on this

16

appeal, she makes no showing that the condition affects her in any way not considered by the ALJ and again a remand on this basis would serve no meaningful purpose.

Plaintiff's plantar fasciitis and her hand problems, past and current, were considered. Indeed, the ALJ credited her with both history of plantar fasciitis and history of left foot fractures as well as history of bilateral carpal tunnel releases and history of recent bilateral hand surgeries. As the hearing reflects, the ALJ was aware of the conditions and Plaintiff was permitted to testify fully about them, including her very recent surgery and the effects of the same on her current condition. Further, there was full opportunity to explore the import of these impairments with the VE. In light of this, I find no basis to conclude that such were not properly considered by the ALJ along with her other impairments.

IV.

While this Plaintiff undoubtedly has a number of impairments affecting her functional capacity, on this appeal I conclude that the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence. The decision is affirmed. Accordingly, the Clerk is directed to enter Judgment in favor of the Defendant and to close the file.

**Done and Ordered** at Tampa, Florida, this 22nd day of July 2010.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record